**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FRANCIS G. SMITH,

        :

                  Petitioner,              Case No.

        :

       -against-

        :      **COMPLAINT**

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.

        :      **JURY TRIAL DEMANDED**

                  Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Petitioner, Francis G. Smith ("Petitioner") as and for his Complaint against Respondent, the Financial Industry Regulatory Authority ("FINRA" or "Respondent"), alleges:

## PRELIMINARY STATEMENT

1.    This action is for a temporary restraining order, preliminary injunction, and permanent injunction to enjoin FINRA from requiring Petitioner to waive his constitutional rights against self-incrimination during on-the-record, sworn testimony. The alternative FINRA has given Petitioner to waiving his constitutional rights against self-incrimination is facing sanctions or even a bar from the securities industry. FINRA requires Petitioner to appear for on-the-record video testimony on February 19, 2025 at 10:00 a.m. By requiring Petitioner to waive his rights, or suffer severe punishment for "not cooperating" according to its "policies" by waiving constitutional rights, FINRA is violating Petitioner's (a) Fifth

Amendment right to assert privilege against self-incrimination, and (b) right to due process under the Fifth Amendment.

2.        This Complaint challenges the constitutionality of FINRA's enforcement and disciplinary procedures, and refusal to recognize the recent authorities of    SEC v. Jarkesy, 144 S. Ct. 2117 (2024); Alpine Sec. Corp. v. FINRA (Alpine I), 2023 U.S. App. LEXIS 16987 (D.C. Cir. 2023); and Alpine Sec. Corp. v. FINRA (Alpine II), 2024 U.S. App. LEXIS 29728 (D.C. Cir. 2024). FINRA maintains that it has "policies" that prevent Petitioner from invoking his constitutional rights during its investigation of him.

3.        This Complaint arises from Respondent's repeated attempts to compel Petitioner to testify under oath against himself to assist FINRA's Department of Enforcement ("DOE") in its investigation into continuing education compliance regarding New York State insurance licensure. FINRA's authority does not extend to life insurance regulation.

**PARTIES**

4.        Petitioner, Francis Smith, is a private individual and citizen of the State of New York, residing in Head of the Harbor, New York. His office is located at FGS Financial, Inc. in Setauket, New York.

5.        Respondent FINRA is a Self-Regulatory Organization ("SRO") with headquarters at 1735 K Street Northwest, Washington, D.C. 20006 and, upon information and belief, is organized and existing under the laws of the State of Delaware. Respondent's Department of Enforcement ("DOE") is the entity

2

designated to investigate violations of federal securities laws and self-regulatory rules and regulations. FINRA is the country's only SRO.

6.      FINRA is supervised by the Securities and Exchange Commission ("SEC") (Alpine II, 2024 U.S. App. LEXIS 29728, at *8 (citing S. REP. NO. 75-1455, at 4 (1938)) and investigates registered representatives, member firms and others in the securities industry regarding potential violations of securities rules and regulations. Enforcement actions brought by the DOE before its in-house arbitration forum, the Office of Hearing Officers ("OHO"). There, FINRA's hearing officers to take testimony, rule on motions, preside over hearings, decide the admissibility of evidence, enforce compliance with discovery orders, and punish contempt. See, e.g., FINRA Rules 8210, 9252, 9235, 9263, and 9280. The matter involving Petitioner is at the investigation stage.

## JURISDICTION & VENUE

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Petitioner alleges that FINRA is violating his Fifth Amendment rights, and 28 U.S.C. § 1332(a) in that Petitioner is a resident of the State of New York, and FINRA is incorporated under the laws of the State of Delaware with its principal place of business in Washington, D.C. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest or costs.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b)(1) because Respondent and its DOE have their principal place of business in Washington, D.C. and is subject to personal jurisdiction in this Court.

3

## FACTUAL ALLEGATIONS

### Procedural History

9.     Petitioner holds Series 6, 7, 63 and Securities Industry Essentials ("SIE") licenses in multiple states and has held two FINRA registrations since September 27, 2012: General Securities Representative (Series 7) and Investment Company and Variable Contracts Products (Series 6). Plaintiff's Central Registration Depository ("CRD") number is 2223161. By virtue of his FINRA licenses and employment with FINRA member firms, Petitioner is an "associated person" under the FINRA Rules. As such, he is obligated to comply fully with FINRA investigations including FINRA Rule 8210.

10.     Petitioner built his successful business in holistic financial planning from the ground up. He currently provides financial advisory services to 385 households, with about 1,100 accounts and has some $210 million in assets under management. His gross commissions exceed $100,000 per month. Petitioner has been associated with FINRA member firms for 32 years. He has been in good standing throughout his entire career and has never been the target of a disciplinary action or investigation. Petitioner has cooperated with Respondent's investigation thus far and intends to continue to do so. However, by this action he seeks to protect his constitutional rights during the course of that investigation.

### Background Facts

11.     On or about March 11, 2024, Petitioner received a Request pursuant to FINRA Rule 8210 from Respondent pursuant to its National Cause and

4

Financial Crimes Detection Program ("the Investigation"). <u>See</u> FINRA Rule 8210 Request, FINRA Examination No. 20240814063 (Mar. 11, 2024; <u>Exhibit A</u> hereto).

12.     On or about March 22, 2024, Petitioner, without the advice of counsel, responded to FINRA's Rule 8210 Request. On or about July 29, 2024, in response to Petitioner's March 22, 2024 submission, Respondent contacted Petitioner to schedule a conference call regarding that Rule 8210 Request. Respondent's vague and seemingly casual email request for a discussion put Petitioner's broker-dealer on notice that he would likely be required to provide sworn testimony, and that the telephone conference and such testimony could or would be used as evidence against him. On or about July 30, 2024, Petitioner notified Respondent that he had retained counsel.

13.     Thereafter, Petitioner's counsel and Respondent engaged in four videoconferences on August 15, August 28, October 10, and October 25, 2024. During these videoconferences, no additional documents or information was sought from Petitioner. However, during the course of these videoconferences, FINRA staff indicated that the issue of concern in this matter was Petitioner's contacts with Wesley Triani, a person known to Petitioner for decades, whose business was to assist Financial Advisors to comply with continuing education requirements. During the course of these videoconferences, Respondent directed counsel to FINRA Letters of Acceptance, Waiver, and Consent ("AWCs") it entered into with 62 registered representatives concerning dealings with Wesley Triani, where individuals neither admitted nor denied the allegations made against them.

See Affidavit of Francis G. Smith dated February 14, 2025 ("Smith Aff.") (at Exhibit D).

14.    The March 11 Rule 8210 Request states: "The purpose of this examination is to determine whether violations of the federal securities laws or FINRA rules have occurred." Addendum A to the March 11 Rule 8210 Request states:

> Under FINRA Rule 8210, **you are obligated to respond to this request fully, promptly, and without qualification.** You are also obligated to supplement or correct any response that you later learn to have been incomplete or inaccurate. If you withhold any responsive document or information, you must specifically identify what you are withholding and state the basis for your doing so. **Any failure on your part to satisfy these obligations could expose you to sanctions, including a permanent bar from the securities industry…**. (emphases added).

Addendum A further states:

> **As a matter of policy, FINRA conducts its examinations on a non-public basis. Nonetheless FINRA may sometimes provide access to its investigative files to other regulatory and law enforcement authorities**[.] (Emphasis added)

15.    During the four FINRA videoconferences, the FINRA staff stated that it wanted to take on-the-record testimony of Petitioner. Consistent with that, Requests setting dates for Petitioner's testimony were sent on November 7, 2024, January 3, 2025, and February 6, 2025. Those Rule 8210 Requests from FINRA (Exhibits B, C, and D hereto) specifically stated Petitioner **could not** assert his Fifth Amendment privilege against self-incrimination:

6

• You will be sworn under oath when you testify. Therefore, *giving false answers could lead to your prosecution for perjury.*

• FINRA staff will consider assertions of common law testimonial privileges such as attorney-client privilege. Because FINRA is not a governmental agency, however, **the Fifth Amendment privilege against self-incrimination does not apply in its investigations and proceedings.** *Refusing to appear for testimony or to answer a question based on an* **assertion of that privilege constitutes a violation of FINRA Rule 8210 and may expose you to sanctions, including a permanent bar from the securities industry.**

(Exhibits B, C, D at 3) (emphases added).

16.     Those Requests referred to FINRA "policies" preventing the invocation of Constitutional rights. FINRA does not provide a citation to the Constitution, or a securities rule or regulation embodying such a policy requiring waiver of a constitutional right or other legal basis upon which FINRA can require the waiver of a constitutional right.

17.     Petitioner has never agreed with FINRA or otherwise knowingly waived his Fifth Amendment rights.

18.     The FINRA "policy" deprives Petitioner of his ability to assert a constitutional defense as to allegations that have been made against him. The policy places him of jeopardy of criminal prosecution if he responds in a matter that incriminates himself. Depriving Petitioner of his constitutional rights exposes him to punishment. This double hammer is unfair.

19.     Petitioner requested that FINRA provide notice of the allegations against him. FINRA staff declined to provide any written notice of the allegations against Petitioner, except to cite its "catch-all" Rule 2010. FINRA Rule 2010 provides:

> A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade.

FINRA Rule 8210 is hopelessly vague and can mean anything that the reader or FINRA desires.

20.     Although FINRA refused to provide the specific allegations against Petitioner, Petitioner speculates that the likely alleged underlying concern of FINRA – gleaned from the 62 instances concerning continuing education the FINRA staff pointed to – is the equivalent of a perjury charge under New York law. See NY CLS Penal §§ 210.00(5), 210.10, 210.15. The penalties under those New York statutes range from 364 days of imprisonment and a $1,000 fine for a Class A misdemeanor (third degree perjury) (NY CLS Penal §§ 70.15(1), 80.05(1)), up to seven years imprisonment and a $5,000 fine (NY CLS Penal §§ 70.00(2)(d), 80.00(1)) for first degree perjury, a class D felony. In addition to those very serious crimes,     under FINRA's Sanctions Guidelines, for continuing education violations provide for the significant fine of up to $20,000 and "suspen[sion]… for a period of one month to two years." "Where aggravating factors predominate, [FINRA may] consider barring" the individual. Petitioner denies wrongdoing. FINRA, FINRA Sanctions     Guidelines     at     99,     FIN.     INDUS.     REG.     AUTH.,

(https://www.finra.org/sites/default/files/Sanctions_Guidelines.pdf) (last accessed February 14, 2025).

21.    In light of a mere suspension, Petitioner of course would be denied his very substantial monthly revenue and face destruction of his client base. If a bar were to be imposed, he would be banned from the industry.

22.    Petitioner will be irreparably harmed by FINRA's patent disregard for his constitutional rights, and the right to his day in court.  Without the Court's intervention, Petitioner must appear and either waive his Fifth Amendment rights, testify, ruin his defense to potential charges, and be at FINRA's mercy and face possible referral to "law enforcement". Alternatively, if he does not appear, and refuses to testify, he faces a permanent bar for refusing to cooperate. Petitioner has done nothing wrong or actionable.

### FINRA is Investigator, Prosecutor, Trier of Fact and Appellate Court

23.    FINRA wields significant executive power under the standards articulated in Jarkesy and Alpine.

24.    FINRA derives its authority from the Securities and Exchange Commission ("SEC") under the Maloney Act of 1938, Pub. L. No. 75-719, 52 Stat. 1070 (1938) (codified as amended under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.).

25.    The SEC is a statutorily appointed government agency empowered by the Securities Exchange Act of 1934. SEC commissioners are appointed by the President of the United States pursuant to the Constitution's

Appointments Clause, and the SEC and its commissioners are empowered with executive authority pursuant to Article II of the Constitution. Pursuant to the Dodd-Frank Act, the SEC can bring enforcement actions either in-house or in Article III courts, where the right to a jury trial would apply.

26.    In 2007, the SEC approved a merger between NASD and the New York Stock Exchange's enforcement arm, creating FINRA. FINRA is now the only registered securities association in the United States. The SEC oversees FINRA, including by reviewing and modifying FINRA's rules and orders. 15 U.S.C. §§ 78s(b)(1), 78s(h)(4), 78o-(b)(7).

### FINRA's Enforcement and Disciplinary Authority

27.    FINRA's "Enforcement Priorities" are "(1) obtaining restitution for harmed customers; (2) ridding the industry of brokers engaged in fraud or other egregious misconduct – especially brokers with a history of violations; (3) protecting seniors and vulnerable investors; and (4) ensuring the integrity of the markets." See FINRA, *Enforcement*, FIN. INDUS. REG. AUTH. (last visited Feb. 11, 2025) https://www.finra.org/rules-guidance/enforcement.

28.    FINRA decides who it investigates and when and how, the tools it requires for investigation, and the scope of its discovery demands. FINRA has given itself that power via FINRA Rule 8210 and authorized itself to issue expansive and unlimited unilateral discovery requests, without restriction on scope. FINRA Rule 8210(a). Rule 8210 provides:

> No member or person shall fail to provide information or
> testimony or to permit an inspection and copying of
> books, records, or accounts pursuant to this Rule.

FINRA 8210(c). Upon finding a violation of a FINRA Rule, e.g., failure to cooperate

with FINRA Rule 8210 Requests, "FINRA may impose one or more of the following

sanctions on a member or person associated with a member for each violation…"

and provides a non-exhaustive list of potential sanctions including fines,

suspensions and bars. FINRA Rule 8310(a). If an individual does not cooperate, i.e.,

asserts his Fifth Amendment privilege, he faces a fine of $10,000 to $50,000; if the

person does "not respond in any manner, a bar is standard." FINRA, FINRA

Sanctions Guidelines at 93, FIN. INDUS. REG. AUTH.,

((https://www.finra.org/sites/default/files/Sanctions_Guidelines.pdf) (last accessed

February 14, 2025).

     29.    FINRA's enforcement procedures are conducted completely

internally. Investigations are initiated by FINRA DOE staff. If a violation is found, the

matter is adjudicated by an internal FINRA panel, the OHO, and can involve multiple

levels of internal appeals. Alpine II, 2024 U.S. App. LEXIS 29728, at *12. An appeal

from the OHO can be heard by FINRA's National Adjudicatory Council ("NAC"). If a

decision is not appealed beyond the OHO or NAC, i.e., to the SEC, it is final and

binding. Alpine I, 2023 U.S. App. LEXIS 16987, at *9-10. In summary, FINRA's

authority over Petitioner is near absolute and almost unchecked.

**Respondent's Wrongdoing in This Case**

30.    As is set forth in the Smith Aff. and the exhibits thereto, demands by FINRA to Petitioner to force him to waive his constitutional rights have been incessant against a serious backdrop. The March 11, 2024 8210 Request states: "The purpose of this examination is to determine whether violations of the federal securities laws or FINRA rules have occurred."

31.    In that Request's Addendum A, Respondent states that failure to comply with a Rule 8210 Request "fully, promptly, and without qualification" could expose Petitioner to sanctions, "including a permanent bar from the securities industry." Addendum A further states: "FINRA may sometimes provide access to its investigative files to other regulatory and law enforcement authorities...." Exhibit A hereto at 4.

32.    The March 11, 2024 Request does not disclose Petitioner's inability to plead the Fifth Amendment privilege against self-incrimination, but provides that information withheld "based on assertion of attorney-client privilege or other legal privileges" must be provided for in a log describing the information and the basis for asserting that privilege. Id. at 3.

33.    On or about November 7, 2024, Respondent sent a Rule 8210 Request, this time for testimony. The November 7, 2024 Request demanded that Petitioner appear by videoconference for testimony "under oath on oral examination." Exhibit B hereto at 1. Attached to that Request was the Supplemental Information for Testimony Requests Pursuant to FINRA Rule 8210, which states:

12

> Failure to answer any questions completely and truthfully, or failure to provide any information requested by the staff, could violate Rule 8210 and could be the basis for the initiation of a disciplinary proceeding that could lead to the imposition of sanctions, including a bar from the industry, suspension, censure and/or fine.

The Supplemental Information states that Petitioner's testimony will be taken under oath, and "giving false answers could lead to [his] prosecution for perjury." Id. at 3. The Request also provides that: "FINRA may sometimes provide access to its investigative files to other regulatory and law enforcement authorities.…" Respondent states in this document:

> Because FINRA is not a governmental agency, however, the Fifth Amendment privilege against self-incrimination does not apply in its investigations and proceedings. Refusing to appear for testimony or to answer a question based on assertion of that privilege constitutes a violation of FINRA Rule 8210 and may expose you to sanctions, including a permanent bar from the securities industry. Id. at 3.

34.    Also annexed to the November 7, 2024 Request is a document titled "Using the FINRA Background Questionnaire and Information Regarding Your Testimony", wherein Respondent states: "You can be liable under FINRA Rules and be subject to state law criminal penalties for providing any intentional misstatements and/or false information in the questionnaire." Id. at 5.

35.    Upon receipt of Respondent's November 7, 2024 Rule 8210 Request for Testimony, counsel for Petitioner objected to its demand for Petitioner's testimony under threat of a permanent bar and without the right to assert his Fifth

Amendment privileges. The language found in the November 7, 2024 Rule 8210

Request, restated here, declares:

> FINRA staff will consider assertions of common law testimonial privilege such as attorney-client privilege. ***Because FINRA is not a governmental agency, however, the Fifth Amendment privilege against self-incrimination does not apply in its investigations and proceedings. Refusing to appear for testimony or to answer a question based on an assertion of that privilege constitutes a violation of FINRA Rule 8210 and may expose you to sanctions, including a permanent bar from the securities industry.*** (emphases added)

Exhibit E hereto at 3. The language of the Request and the FINRA "policy" that

purports to limit Petitioner's constitutional rights is not disclosed.

36.    Rule 8210 is the equivalent of a subpoena.  However, FINRA's

service of it upon Petitioner purports to prohibit him from asserting his Fifth

Amendment privilege, which otherwise is afforded to every witness providing

sworn testimony while under subpoena.

37.    FINRA regularly shares information and findings from its

investigations with law enforcement while threatening permanent bars for failure

to fully comply with its investigations. FINRA, *2023: Key Statistics*, FIN. INDUS. REG.

AUTH. (https://www.finra.org/media-center/statistics); see also FINRA, *Working on

the Front Lines of Investor Protection – The Importance of FINRA Rule 8210*, FIN.

INDUS. REG. AUTH., https://www.finra.org/media-center/blog/working-front-lines-

investor-protection-importance-finra-rule-8210 (Jul. 20, 2020).

38. FINRA accomplishes that information sharing with law enforcement by stripping financial advisors, like Petitioner, of their constitutional rights and potentially exposing them to further, even criminal, punishment.

39. FINRA asserts that by "voluntarily" holding membership, member firms and associated persons submit themselves to complete compliance with FINRA rules, and thus "voluntarily" waive constitutional protections. However, federal law **requires** all individuals who work as securities professionals to associate with an SRO. Pursuant to 15 U.S.C. § 78o(b)(1). Because FINRA emerged as the securities industry's sole SRO, securities professionals *must* associate with *FINRA* member firms, *must* register as "associated persons" with *FINRA*, and *must* consent to *FINRA's* arbitral and disciplinary jurisdiction. Association **required** by federal law, by definition, is not voluntary and this request to Petitioner comes 32 years into his career. Waiving constitutional protections under threat of a permanent bar from the securities industry, by definition, is not voluntary and Petitioner is required to register with FINRA as a registered representative.

40. Respondent's sanctions carry the force of federal law. Pursuant to 15 U.S.C. § 78s(g)(1). Respondent's sanctions are intended to be punitive, not remedial, because they are designed to be "meaningful and significant enough to prevent and discourage future misconduct … and deter others from engaging in similar misconduct." FINRA, FINRA Sanctions Guidelines at 2, FIN. INDUS. REG. AUTH., (https://www.finra.org/sites/default/files/Sanctions_Guidelines.pdf) (last accessed February 14, 2025). Respondent authorized itself to impose permanent bars on

15

individuals who violate FINRA Rules. FINRA, FINRA Rule 8310, Fɪɴ. Iɴᴅᴜѕ. Rᴇɢ. Aᴜᴛʜ., (https://www.finra.org/rules-guidance/rulebooks/finra-rules/8310) (last accessed February 14, 2025). Permanent bars from FINRA are necessarily permanent bars from the securities industry, the effect of which is the corporate equivalent of capital punishment.

41.    Notwithstanding Petitioner's desire to continue to cooperate with the investigation, Respondent continues to threaten him with sanctions and/or a permanent bar if he asserts his Fifth Amendment privilege against self-incrimination. FINRA's position necessarily cripples Petitioner's right to put on a defense.

42.    Respondent seeks to cooperate with FINRA and its demands that Petitioner testify, but Petitioner objects to being denied the right to assert his Fifth Amendment privilege against self-incrimination.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*(Violation of the Fifth Amendment)*

43.    Petitioner repeats, realleges, and incorporates the allegations set forth in the foregoing as if set forth herein.

44.    Petitioner is entitled to assert his Fifth Amendment privilege against self-incrimination in any proceeding if he has a reasonable fear that his testimony will lead to criminal prosecution or be used as evidence in such proceedings.

45.    Respondent has repeatedly refused to acknowledge Petitioner's Fifth Amendment rights and continues to demand his testimony.

46.    Respondent has advised Petitioner that in the Investigation, testimony that Petitioner gives may be forwarded to law enforcement authorities.

47.    Respondent has advised Petitioner that if he does not testify he faces sanctions or being barred from the securities industry.

48.    FINRA has declined to inform Petitioner in any way of the conduct regarding the securities industry that is being investigated.

49.    If Petitioner testifies in the Investigation, he has a reasonable fear that he may incriminate himself or that the testimony he gives may hinder, prejudice or impair his defense in any subsequent proceeding or prosecution filed against him.

50.    If Petitioner does not testify or if he asserts his Fifth Amendment privilege, Respondent may impose an industry bar against him or sanction him and Respondent has taken the position that such punishment is not stayed pending an appeals process.

51.    Any sanction or bar could have the effect of destroying Petitioner's firm and career that he has worked so long and hard to build.

52.    On November 24, 2024, FINRA issued a statement in response to the decision in Alpine II:

> Following last week's Court of Appeals decision, FINRA remains confident that the self-regulatory model will continue to support the unique fairness and integrity of

America's securities markets—as it has for more than 200 years.

The court ruled that FINRA can move forward with its expedited proceeding against Alpine. The court also ruled that Alpine cannot be expelled from FINRA membership in an expedited proceeding before the SEC has the opportunity to review FINRA's decision.

The court did not resolve the ultimate merits of any of Alpine's constitutional challenges, which it left to the district court to determine. As FINRA continues to consider its response to the decision, it believes it can implement measures to address the framework the court requires.

The decision does not impair FINRA's day-to-day work in carrying out its mission of protecting investors and ensuring market integrity.

R. De Ramos, "FINRA Statement Regarding U.S. Court of Appeals DC Circuit Court Decision in <u>Alpine Securities Corporation vs. Financial Industry Regulatory Authority, Inc.</u> (Nov. 26, 2024) (<u>Exhibit E</u> hereto). Respondent recognizes that it must amend its disciplinary procedures to conform to the constitutional protections required by <u>Alpine II</u> but has not yet done so.

53.    Petitioner has cooperated with Respondent's investigation and will continue to do so but without waiving his constitutional rights.

54.    Due Process of Law requires a fair investigation and a fair trial before a fair and unbiased tribunal.

55.    15 U.S.C. § 78o-3(b)(8) requires the rules of a securities regulatory organization, like FINRA, to "provide a fair procedure for the disciplining of members and persons associated with members . . ." FINRA's "policies"

18

prohibiting Petitioner from asserting his Fifth Amendment privilege deprive him of his ability to assert a constitutional defense. Therefore, FINRA's disciplinary procedures are, by definition, unfair.

56.   By reason of the foregoing, FINRA has violated Petitioner's Fifth Amendment constitutional rights. Petitioner has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law.

57.   Petitioner is entitled to a temporary restraining order, preliminary injunction and a permanent injunction vindicating his constitutional rights. Plaintiff is also entitled to consequential damages in an amount to be proved at trial    together with his attorneys' fees and costs.

### SECOND CAUSE OF ACTION
*(Declaratory Judgment That Petitioner  May Assert His*
*Fifth Amendment Privilege Against Self-Incrimination)*

58.   Petitioner repeats, realleges, and incorporates the allegations contained in the foregoing paragraphs as if set forth herein.

59.   FINRA asserts that it has a "policy" prohibiting Petitioner from asserting the privilege against self-incrimination guaranteed to him by the Fifth Amendment.   If such a policy in fact exists it violates Petitioner's Fifth Amendment rights.

60.   Petitioner has never knowingly agreed to waive his Fifth Amendment rights in connection with his securities licenses or otherwise with FINRA.

61.    FINRA's policy requiring a waiver of constitutional rights violates the Fifth Amendment.  Petitioner's Fifth Amendment privilege against self-incrimination may be asserted in *any proceeding*, civil or criminal, and protects against disclosures that may reasonably be used against the declarant in a criminal prosecution.

62.    On information and belief, the Investigation that FINRA is conducting could involve, concern, touch on or implicate perjury under New York law.  Petitioner has a reasonable fear that FINRA's Investigation and its methods of investigation could wrongly implicate in bad conduct and place him in jeopardy.  FINRA has given Petitioner notice that may refer his testimony to and its investigation to law enforcement.

63.    Petitioner denies any wrongdoing.

64.    Petitioner has repeatedly urged FINRA to voluntarily respect his constitutional rights, but Respondent refuses to do so.

65.    The options FINRA has presented to Petitioner violate his Fifth Amendment rights.  First, Petitioner can either cooperate with FINRA's Investigation fully and waive his Fifth Amendment rights, and potentially implicate himself or hinder or impair his defense and face possible referral to law enforcement in addition to the sanctions FINRA seeks to impose upon him.  Second, Petitioner can refuse to testify and face severe sanctions or an automatic bar from FINRA.

66.    Respondent's conduct prejudges Petitioner's conduct and severely injures him.  The options FINRA presents likely would destroy all that he has worked so hard for during the course of his 32 year career.

67.    FINRA is the only SRO for the securities industry.  FINRA does not have the power to cancel the constitutional right against self-incrimination.

68.    15 U.S.C. § 78o-3(b)(8) requires the rules of a self regulatory organization, like FINRA, to "provide a fair procedure for the disciplining of members and persons associated with members …." FINRA's "policies" prohibiting Petitioner from asserting his Fifth Amendment privilege deprive him of his ability to assert a constitutional defense.

69.    Due Process of Law requires a fair investigation and a fair trial before an unbiased tribunal.  FINRA's Investigation insofar as it concerns Petitioner contravenes his constitutional rights.

70.    Petitioner has been and will continue to cooperate with FINRA's investigation, provided he is afforded the opportunity to assert his Fifth Amendment right against self-incrimination. Accordingly, Petitioner requests this Court to declare that Respondent is subject to the Fifth Amendment as a matter of Due Process, and prevent Respondent from imposing severe sanctions against Petitioner for exercising his right against self-incrimination.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that a judgment be entered in its favor against Respondent as follows:

a.    In support of all claims for relief, a temporary and preliminary injunction lasting until such time as this Court grants a permanent injunction, enjoining and restraining Respondent, directly or indirectly, and whether alone or in concert with others, including but not limited to the directors, officers, employees and/or agents of FINRA, from:

(1) demanding, attempting to demand, requiring or attempting to require, or otherwise compelling Petitioner to waive his Fifth Amendment rights while providing sworn testimony in connection with the Investigation;

(2) using, disclosing, or transmitting for any purpose, in violation of the Fifth Amendment, Petitioner's testimony, documents and/or materials pertaining to the Investigation;

(3) threatening sanctions, or the imposition thereof, in connection with the Investigation;

b.  actual and consequential damages, attorneys' fees, pre-and-post-judgment interest as allowed by law; and

c.  Such other and further relief as the Court deems just and proper.

Dated:        Owings Mills, Maryland
              February 14, 2025

                                        RKW LAW GROUP

                                        By: */s/ H. Mark Stichel*
                                        H. Mark Stichel (Bar ID 503038)
                                        10075 Red Run
                                        Boulevard Suite 401
                                        Owings Mills, Maryland 21117
                                        (443) 379-8987
                                        HMStichel@RKWlawgroup.com

                                        Anthony Paduano
                                        (*pro hac vice pending*)
                                        PADUANO & WEINTRAUB LLP
                                        1251 Avenue of the Americas
                                        New York, New York 10020
                                        (212) 785-9100
                                        ap@pwlawyers.com

                                        *Attorney for Petitioner*
                                        *Francis G. Smith*