**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FRANCIS G. SMITH,

                                    :

                Petitioner,            Case No.

                                    :

      -against-

                                    :

FINANCIAL INDUSTRY REGULATORY AUTHORITY,
INC.,

                                    :

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF**
**PETITIONER'S APPLICATION FOR A TEMPORARY**
**RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

**PADUANO & WEINTRAUB LLP**
**1251 Avenue of the Americas**
**Ninth Floor**
**New York, New York 10020**
**(212) 785-9100**

**Attorneys for Petitioner**
**Francis G. Smith**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

Preliminary Statement ............................................................................. 1

Factual Background ................................................................................. 6

ARGUMENT ............................................................................................. 6

PETITIONER IS ENTITLED TO A TEMPORARY RESTRAINING ORDER .................... 6

POINT I JUDICIAL STANDARD ..................................................................... 6

POINT II PETITIONER SATISFIES ALL REQUIREMENTS FOR INJUNCTIVE
      RELIEF BECAUSE FORCED WAIVER OF FIFTH AMENDMENT RIGHTS
      OFFENDS THE HOLDINGS IN JARKESY AND ALPINE ............................... 7

    A. Petitioner is Likely to Succeed on the Merits of His
       Constitutional Challenge to Respondent's Investigative Processes ............... 7

       1. FINRA is Bound by the Precedent
          Set by SEC v. Jarkesy and Alpine ............................................. 12

       2. FINRA is Subject to the Fifth Amendment................................. 18

    B. No Adequate Remedy at Law Exists for Petitioner ......................................... 22

    C. The Threatened Injury to Petitioner
       Outweighs the Potential Harm to FINRA........................................... 23

    D. An Injunction is in the Public Interest ............................................... 24

Conclusion ............................................................................................. 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

Alpine Sec. Corp. v. Fin. Indus. Regul. Auth. (Alpine I),
    2023 U.S. App. LEXIS 16987 (D.C. Cir. Jul. 5, 2023)..................................... *passim*

Alpine Sec. Corp. v. Fin. Indus. Regul. Auth. (Alpine II),
    2024 U.S. App. LEXIS 29728 (D.C. Cir. Nov. 22, 2024)................................. *passim*

Ass'n of Am. R. R. v. United States DOT (Amtrak I),
    721 F.3d 666 (D.C. Cir. 2013)................................................................................ 11, 14

Balt. City Dep't of Social Services v. Bouknight, 488 U.S. 1301 (1988).................... 23

Baxter v. Palmigiano, 425 U.S. 308 (1976).................................................................. 18

Buckley v. Valeo, 424 U.S. 1 (1976) ........................................................................ 8, 13

Changji Esquel Textile Co. Ltd. v. Raimondo,
    40 F.4th 716 (D.C. Cir. 2022)..................................................................................... 6

Church v. Biden,
    573 F. Supp. 3d 118 (D.C. Cir. 2021)...................................................................... 23

Costa v. Bazron,
    464 F. Supp. 3d 132 (D.D.C. 2020) ........................................................................ 24

Davis v. Billington,
    76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................................ 22

Doe v. District of Columbia,
    2021 U.S. Dist. LEXIS 264812 (D.D.C. Aug. 19, 2021) ......................................... 18

Freytag v. Commissioner, 501 U.S. 868, 881 (1991)................................................... 13

Garrity v. New Jersey, 385 U.S. 493 (1967) ................................................................ 18

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989)................................................... 8

Hi-Tech Pharmacal Co. v. FDA, 587 F. Supp. 2d 1 (D.D.C. 2008)............................. 22

In re Corrugated Container Antitrust Litig.,
    662 F.2d 875 (D.C. Cir. 1981)................................................................................. 19

Kastigar v. United States, 406 U.S. 441 (1972) ........................................................... 18

Lefkowitz v. Cunningham, 431 U.S. 801 (1977) ........................................................... 4n

Lucia v. SEC, 585 U.S. 248 (2018) .......................................................... 4, 10, 13, 14, 15

Mexichem Specialty Resins, Inc. v. EPA,
    787 F.3d 544 (D.C. Cir. 2015)................................................................................ 22

M.G.U. v. Nielsen,
    325 F. Supp. 3d 111 (D.D.C. 2018) ........................................................................ 25

Minnesota v. Murphy, 465 U.S. 420, 434 (1983)........................................................... 4n

Mohammed Nazir Bin Lep v. Trump,
    2020 U.S. Dist. LEXIS 234044 (Dec. 14, 2020) ..................................................... 22

Montgomery v. Comey,
    300 F. Supp. 3d 158 (D.D.C. 2018).......................................................................... 25

National Treasury Employees Union v. United States,
    838 F. Supp. 631 (D.D.C. 1993) ............................................................................. 4n

PAZ Sec., Inc. v. SEC,
    494 F.3d 1059 (D.C. Cir. 2007)................................................................................ 16

SEC v. College Bound,
    849 F. Supp. 65 (D.D.C. 1994) ................................................................................ 18

SEC v. Jarkesy, 144 S.Ct. 2117 (2024) ............................................................... *passim*

Sierra Club v. U.S. Dep't of Energy,
    825 F. Supp. 2d 142 (D.D.C. 2011).......................................................................... 22

Spevack v. Klein, 385 U.S. 511 (1967) ................................................................... 4n, 19

Tull v. United States, 481 U.S. 412 (1987).................................................................... 8

United States v. Roberts, 660 F.3d 149 (2d Cir. 2011).................................................. 4

Winter v. NRDC, Inc., 555 U.S. 7 (2008) ............................................................. 22, 23

**U.S Constitution**

U.S. CONST. amend. V ................................................................. 18

**Statutes**

15 U.S.C. § 78o-3(b)................................................................... 23

15 U.S.C. § 78s(g) ...................................................................... 15

NY CLS Penal §§ 70.00(2)(d) ...................................................... 21

NY CLS Penal §§ 70.15(1).......................................................20-21

NY CLS Penal §§ 80.00(1)) .......................................................... 21

NY CLS Penal §§ 80.05(1)............................................................ 21

NY CLS Penal §§ 210.00(5)........................................................... 20

NY CLS Penal §§ 210.10 .............................................................. 20

NY CLS Penal §§ 210.15 .............................................................. 20

**Rules**

FINRA Rule 2010 .................................................................... 2, 20

FINRA Rule 8210 ................................................................... *passim*

FINRA Rule 8310 ...................................................................... 16

**Other Authorities**

Alpine Securities Corp. v. Financial Industry Regulatory Authority,
137 Harv. L. Rev. 1042 (2024)...................................................... 17

FINRA, *Working on the Front Lines of Investor Protection – Barring Bad Actors from the Industry*, FIN. INDUS. REG. AUTH. (Mar. 30, 2020)
https://www.finra.org/media-center/blog/working-on-the-front-lines-of-investor-protection%E2%80%93barring-bad-actors-from-the-industry ................................. 16

FINRA, *Insurance Agents*, FIN. INDUS. REG. AUTH. https://www.finra.org/investors/investing/working-with-investment-professional/insurance-agents#:~:text=If%20an%20insurance%20agent%20offers,working%20with%20an%20investment%20professional. (last accessed Feb. 12, 2025) .........................1n-2n

Petitioner Francis G. Smith ("Petitioner") respectfully submits this Memorandum of Law in support of his application for a Temporary Restraining Order and a Preliminary Injunction restraining Respondent the Financial Industry Regulatory Authority ("FINRA" or "Respondent") from violating his constitutional rights.

## **PRELIMINARY STATEMENT**

Petitioner seeks a temporary restraining order enjoining FINRA from forcing him to waive his Fifth Amendment privilege against self-incrimination during his sworn testimony before FINRA's Department of Enforcement on February 19, 2025. FINRA's disciplinary procedures are subject to constitutional limitations under the standards set in <u>SEC v. Jarkesy</u>, 144 S. Ct. 2117 (2024); <u>Alpine Sec. Corp. v. FINRA (Alpine I)</u>, 2023 U.S. App. LEXIS 16987 (D.C. Cir. 2023); and <u>Alpine Sec. Corp. v. FINRA (Alpine II)</u>, 2024 U.S. App. LEXIS 29728 (D.C. Cir. 2024).

The facts relevant to this application are set forth in the Affidavit of Francis G. Smith ("Smith Aff.") and only summarized here.

This action arises from FINRA's investigation into allegations related to continuing education requirements for New York State insurance licenses. Insurance licensing and the requirements therein are governed by the individual state insurance commissions and are not under FINRA's regulatory purview. FINRA has no authority over insurance licensing,[1] FINRA apparently seeks to investigate

---

[1] <u>See</u> FINRA, *Insurance Agents*, Fɪɴ. Iɴᴅᴜꜱ. Rᴇɢ. Aᴜᴛʜ. (last accessed Feb. 12, 2025)

and discipline Petitioner under its catch-all Rule 2010 "good faith and fair dealing" rule. Beginning on or about March 11, 2024, Petitioner became entangled in FINRA's investigative process. On March 11, 2024, Petitioner received a Rule 8210 Request from FINRA, pursuant to its National Cause and Financial Crimes Detection Program. Smith Aff. at Exhibit B. The March 11 Request states: "The purpose of this examination is to determine whether violations of the federal securities laws or FINRA rules have occurred." Addendum A to the Request states:

> Under FINRA Rule 8210, **you are obligated to respond to this request fully, promptly, and without qualification.** You are also obligated to supplement or correct any response that you later learn to have been incomplete or inaccurate. If you withhold any responsive document or information, you must specifically identify what you are withholding and state the basis for your doing so. ***Any failure on your part to satisfy these obligations could expose you to sanctions, including a permanent bar from the securities industry….*** (emphases added).

Addendum A further states:

> As a matter of policy, FINRA conducts its examinations on a non-public basis. Nonetheless FINRA may sometimes provide access to its investigative files to other regulatory and law enforcement authorities[.]

Without counsel, Petitioner promptly responded to the questionnaire that accompanied the Request which did not seek testimony.

On November 7, 2024, January 3, 2025, and February 6, 2025,

---

https://www.finra.org/investors/investing/working-with-investment-professional/insurance-agents#:~:text=If%20an%20insurance%20agent%20offers,working%20with%20an%20investment%20professional.

Petitioner received additional Rule 8210 Requests from FINRA, this time demanding on-the-record, sworn testimony. Smith Aff. at Exhibits E, F, G. Each Request states:

> • You will be sworn under oath when you testify. Therefore, *giving false answers could lead to your* **prosecution for perjury**.

> • FINRA staff will consider assertions of common law testimonial privileges such as attorney-client privilege. Because FINRA is not a governmental agency, however, ***the Fifth Amendment privilege against self-incrimination does not apply in its investigations and proceedings. Refusing to appear for testimony or to answer a question based on an assertion of that privilege constitutes a violation of FINRA Rule 8210 and may expose you to sanctions, including a permanent bar from the securities industry.*** (Emphases added).

Petitioner has stated he will appear and testify and has urged FINRA to voluntarily respect his constitutional rights against self-incrimination, but FINRA refuses.

Instead, FINRA has threatened a permanent bar from the securities industry, pursuant to FINRA Rule 8210(c), if he fails to cooperate fully. According to FINRA, full cooperation requires Petitioner to waive his constitutional rights, including his Fifth Amendment privilege against self-incrimination. This is unfair and unconstitutional because it deprives Petitioner of his ability to assert a defense and forces him to provide potentially incriminating evidence that will be used

against him. Similarly, if Petitioner does not appear he is likewise subject to sanctions or a permanent bar.[2]

FINRA says that Petitioner cannot exercise his constitutional rights pursuant to FINRA "policy." FINRA's actions against Petitioner are unconstitutional under the standards set out in Jarkesy and Alpine. By forcing Petitioner to waive his Fifth Amendment privilege based on an internal "policy", FINRA is impermissibly wielding significant Executive power. Jarkesy, 144 S. Ct at 2139 (holding that the Seventh Amendment applies to SEC proceedings pursuing civil penalties because to hold otherwise "would permit Congress to concentrate the roles of prosecutor, judge, and jury in the hands of the Executive Branch" in violation of the separation of powers); Alpine I, 2023 U.S. App. LEXIS 16987, at *6-7 (Walker, J. concurring) (holding that FINRA hearing officers are virtually carbon copies of the SEC ALJs discussed in Lucia, and "if the ALJs in Lucia exercised

---

[2] FINRA's Rule 8210(c) is unconstitutional because it is coercive. Testimony cannot be compelled "through threat of 'economic or other sanctions[.]'" United States v. Roberts, 660 F.3d 149, 156 (2d Cir. 2011) (quoting Minnesota v. Murphy, 465 U.S. 420, 434 (1983)) (finding no coercion to testify because Defendant's job was in jeopardy due to his conduct, and not due to his failure to testify). Cf. Spevack v. Klein, 385 U.S. 511, 516 (1967) (finding testimony was compelled by the threat of the loss of livelihood) ("The threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion to make a lawyer relinquish the privilege"). See also National Treasury Employees Union v. United States, 838 F. Supp. 631, 639 (D.D.C. 1993) (finding that answers related to drug use were coerced by employer who falsely stated that employees' answers would not be used against them) ("An employee who is discharged for refusing to answer under these circumstances is, in fact, being discharged for a refusal to waive his constitutional privilege." (citing Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977)).

'significant' executive power, then FINRA hearing officers probably do too."
(citations omitted)); Alpine II, 2024 U.S. App. LEXIS 29728, at *34 (taking issue with
FINRA's ability to unilaterally expel members from the securities law without
governmental review); Alpine II at *51 (Walker, J. concurring in part, dissenting in
part) ("FINRA wields significant executive authority when it investigates,
prosecutes, and initially adjudicates allegations against a company required by law
to put itself at FINRA's mercy"). Under Jarkesy and Alpine, the power FINRA is
exercising is subject to constitutional limitations, and it must afford Petitioner the
ability to exercise his constitutional rights. Jarkesy, 144 S. Ct. at 2139 (holding that
the SEC is subject to constitutional limitations under the Seventh Amendment);
Alpine I, 2023 U.S. App. LEXIS 16987, at *10 (Walker, J. concurring) (enjoining
FINRA from imposing an industry ban on Alpine Securities pending litigation on the
merits, holding: "There is a serious argument that FINRA hearing officers exercise
significant executive power"); Alpine II, 2024 U.S. App. LEXIS 29728, at *18
(granting a limited preliminary injunction enjoining FINRA from expelling Alpine
until after the SEC has reviewed FINRA's decision).

      FINRA's repeated refusal to respect Petitioner's constitutional rights
and its repeated threats to punish him, including barring him, if he chooses to
exercise those rights, for the equivalent of contempt are unlawful. Petitioner will be
irreparably harmed by Respondent's lack of transparency and blatant disrespect for
and deprivation of his constitutional rights. He will continue to suffer irreparable
harm if FINRA's investigation is allowed to move forward in derogation of his

constitutional rights. Given the holdings in <u>Jarkesy</u> and <u>Alpine</u>, Petitioner can show he is likely to succeed on the merits. The harm to Petitioner, as well as his clients, far outweighs FINRA's interest in compelling Petitioner's testimony over constitutional protections. Accordingly, Petitioner is entitled to a temporary restraining order.

## **FACTUAL BACKGROUND**

The facts and exhibits relating to this motion are set forth in the accompanying Smith and Paduano Affidavits and are not repeated herein.

## **ARGUMENT**

## **PETITIONER IS ENTITLED TO A TEMPORARY RESTRAINING ORDER**

## **POINT I**

## **JUDICIAL STANDARD**

A party seeking a temporary restraining order must demonstrate: (1) a likelihood of success on the merits; (2) it is likely to suffer irreparable harm in the absence of an injunction; (3) that the equities are balanced in its favor; and (4) the injunction is in the public interest. <u>Alpine Sec. Corp. v. FINRA (Alpine II)</u>, 2024 U.S. Dist. LEXIS 29728, at *17 (D.C. Cir. Nov. 22, 2024) (Millett, C.J.) (citing <u>Changji Esquel Textile Co. Ltd. v. Raimondo</u>, 40 F.4th 716, 721 (D.C. Cir. 2022)).

As is established below, the requirements for injunctive relief are satisfied here because FINRA's internal enforcement processes allow it to exercise significant executive power and thus are subject to constitutional limitations. <u>Jarkesy</u>, 144 S. Ct. at 2139; <u>Alpine I</u>, 2023 U.S. App. LEXIS 16987, at *9-10; <u>Alpine</u> II,

6

2024 U.S. App. LEXIS 29728 at *18. Therefore, a temporary restraining order should issue restraining FINRA from violating Petitioner's constitutional rights by requiring him to provide sworn testimony without allowing him to assert the privilege against self-incrimination.

**POINT II**

**PETITIONER SATISFIES ALL REQUIREMENTS FOR INJUNCTIVE RELIEF BECAUSE FORCED WAIVER OF FIFTH AMENDMENT RIGHTS OFFENDS THE HOLDINGS IN JARKESY AND ALPINE**

**A. Petitioner Is Likely to Succeed on the Merits of His Constitutional Challenge to Respondent's Investigative Processes**

In SEC v. Jarkesy, 144 S.Ct. 2117 (2024), the SEC sought to impose civil penalties against Jarkesy for alleged securities fraud. In 2013, the SEC brought an enforcement action before an SEC Administrative Law Judge ("ALJ") and charged that Jarkesy and his company launched investment strategies and values. The SEC ALJ issued an initial decision and the Commission reviewed it. In its final order against Jarkesy in 2020, the Commission levied a civil penalty of $300,000, directed Jarkesy to cease and desist the alleged conduct, and barred him from the securities industry. Id. at 2126-27.

The Fifth Circuit vacated the Commissioner's order, and the Supreme Court affirmed that ruling. The Court held that defendants facing fraud suits have the right to trial by jury before a neutral adjudicator and that to allow otherwise would violate the separation of powers by "permit[ting] Congress to concentrate the roles of prosecutor, judge, and jury in the hands of the Executive Branch." Id. at

2139. The Court reasoned: "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" Id. at 2128 (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 53 (1989)). The Court held that if the aim of the remedy is to punish culpable individuals, the claim is legal in nature, and only a court of law can enforce such punishment. Id. at 2129 (quoting Tull v. United States, 481 U.S. 412, 422 (1987)). The Court determined that disputes in which the remedy sought is punitive, thus legal, in nature, it effectively "implicates the Seventh Amendment right, and that a defendant would be entitled to a jury on these claims." Id. at 2130. The Court affirmed the holding of the Fifth Circuit and remanded the case for further proceedings consistent with the Court's holding. Id. at 2139. The Seventh Amendment right to jury is core as are the Fifth Amendment rights against to due process and against self-incrimination.

In Alpine Sec. Corp. v. FINRA (Alpine I), 2023 U.S. App. LEXIS 16987 (D.C. Cir. 2023), the United States Court of Appeals for the D.C. Circuit extended Jarkesy to FINRA proceedings because of the sheer power FINRA's officers exercise in disciplinary proceedings. In Alpine I, FINRA's Department of Enforcement sought to impose a permanent industry bar against Alpine Securities Corporation due to Alpine's alleged violations of a pre-existing cease and desist order prohibiting its owner from engaging in securities trading. Id. at *2-3. The court held that by doing so, FINRA, although a private entity, was exercising significant executive power without being an "Officer of the United States." Id. at *5 (citing Buckley v. Valeo, 424 U.S. 1, 125 (1976)). The court held that, like SEC ALJs, FINRA's officers have the

8

power to "demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt." Id. at *6 (emphasis added) (citing FINRA Rules 8210, 9252, 9263, 9280). In so holding, the court granted Alpine's motion for a preliminary injunction staying FINRA's enforcement proceedings while its underlying appeal was pending.

On November 22, 2024, the Court of Appeals granted Alpine's motion for a preliminary injunction enjoining FINRA from expelling Alpine as a member firm before a review by the Securities and Exchange Commission. Alpine Sec. Corp. v. FINRA (Alpine II), 2024 U.S. App. LEXIS 29728, at *15 (Nov. 22, 2024). The Court's very limited ruling did not reach issues presented by Jarkesy. Id. at *14, n. 2. Judge Walker, dissenting in part and concurring in part, observed the long list of actions FINRA may take "all without government oversight" that constitute an "'especially provocative exercise of governmental power by a private organization'" that "transgresses the private nondelegation doctrine." Id. at *15 (Walker, J. dissenting in part, concurring in part) (quoting 1 Kenneth Culp Davis, Administrative Law Treatise 141 (1st ed. 1958)).

The Court in Alpine II limited its opinion to the preliminary injunction, and did not discuss the merits of Alpine's constitutional challenges. However, the unanimous holding in Alpine II enjoins  FINRA's current disciplinary procedures. Alpine II, 2024 U.S. App. LEXIS 29728, at *50. This holding comes from the reasoning in Jarkesy and Alpine I: that Respondent cannot be investigator,

prosecutor, judge, jury and appellate court. Jarkesy, 144 S. Ct. at 2139; Alpine I, 2023 U.S. App. LEXIS 16987, at *6-7 (Walker, J. concurring) ("[H]earing officers demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt … [I]f the ALJs in Lucia exercised 'significant' executive power, then FINRA hearing officers probably do too." (citations omitted)). Unchecked power is impermissible. Jarkesy, 144 S. Ct. 2139; Alpine I, 2023 U.S. App. LEXIS 16987, at *6-7; Alpine II, 2024 U.S. App. LEXIS 29728, at *32. Alpine II makes very clear that FINRA possesses enormous power and, thus, may not run roughshod over constitutional rights. Alpine II, 2024 U.S. App. LEXIS 29728, at *18 ("FINRA can unilaterally expel a member and, in so doing, bar the expelled [member] from engaging in [the securities industry], all without governmental superintendence or control"); Id. at *51 (Walker, J. concurring in part, dissenting in part) ("FINRA wields significant executive authority when it investigates, prosecutes, and initially adjudicates allegations against a [respondent] required by law to put [himself] at FINRA's mercy").

By requiring Petitioner to waive his Fifth Amendment right or face sanctions or expulsion from the industry if he fails to appear to testify, FINRA is running roughshod over Petitioner's constitutional rights. Worse, FINRA is taking this position not pursuant to a grant from Congress or the SEC but from an uncited "policy". On top of this, FINRA states it "may" take compelled testimony and deliver it to "law enforcement".

Petitioner is entitled to injunctive relief to prevent FINRA prohibiting him from asserting his privilege against self-incrimination during his sworn testimony that will be used to determine punishment for alleged FINRA Rule violations, the specifics of which remain undisclosed. FINRA claims it "believes in a fair and transparent process." <u>See</u> FINRA, *Enforcement*, FIN. INDUS. REG. AUTH., https://www.finra.org/rules-guidance/enforcement (last visited Feb. 11, 2025). However, FINRA deploys broad power to impose burdensome, arbitrary, and ill-defined standards without the SEC's oversight or regard for binding legal precedent. FINRA decides who it investigates, the tools it requires for investigation, and the scope of its discovery demands. Via FINRA Rule 8210, FINRA authorized itself to issue expansive and unlimited unilateral discovery requests pursuant to FINRA Rule 8210(a)(1).

In <u>Alpine II</u>, FINRA argued that it is not a state actor, and, thus, not subject to constitutional limitations. The Court did not decide the issue of whether FINRA is public or private. However, the Court ruled that FINRA's practices violate the private nondelegation doctrine because there must be "an accountable government actor 'that retains the discretion to approve, disapprove, or modify' FINRA's delegated decisions." <u>Alpine I</u>, 2024 U.S. App. 29728, at *26 (quoting <u>Ass'n of Am. R. R. v. United States DOT (Amtrak I)</u>, 721 F.3d 666, 671 (D.C. Cir. 2013), <u>vacated and remanded on other grounds</u>, <u>575 U.S. 43 (2015)</u>). As a result, FINRA could, "without any SEC review of its decision on the merits, effectively decide who can trade securities under federal law." Id. at *25. Therefore, FINRA is bound by

11

<u>Jarkesy</u> and the <u>Alpine</u> cases. Here, that "unchecked power" is forcing the involuntary waiver of the Fifth Amendment right against self-incrimination and due process by Petitioner who, for 32 years, has known no business but the securities industry. FINRA says this "waiver" is done pursuant to "policy" which has never before been signed or presented to Petitioner and must respect Petitioner's constitutional rights.[3]

---

[3] In civil proceedings "[a] witness waives his Fifth Amendment privilege by 'voluntarily rais[ing]' an incriminating issue." <u>Gao Wengui v. Clark Hill PLC</u>, 2021 U.S. Dist. LEXIS 204645, at *7 (D.D.C. Oct. 25, 2021) (Boasberg, J.) (denying motion to compel Plaintiff's testimony on the grounds that Plaintiff did not waive his Fifth Amendment privilege for the current proceeding by testifying in a prior proceeding because the topics about which he was asked were broad, the prior proceeding was a different lawsuit, and Defendants could not establish waiver by preponderance of the evidence) (citing <u>SEC v. Parkersburg Wireless LLC</u>, 156 F.R.D. 529, 535 (D.D.C. 1994)); but see <u>Doe v. Sipper</u>, 869 F. Supp. 2d 113, 118 (D.D.C. 2012) (Boasberg, J.) (holding that Defendant did not waive his rights by responding to interrogatories and providing other information because he was not under oath and because there is a presumption against waiver) ("Although Defendant here has answered interrogatories, he has not testified in a deposition or been examined under oath, and a waiver is 'not lightly to be inferred.'") (quoting <u>Smith v. United States</u>, 337 U.S. 137, 150 (1949)); <u>compare United States v. Brathwaite</u>, 2018 U.S. Dist. LEXIS 63767, at *26 (E.D.N.Y. Mar. 27, 2018) (holding that defendant validly waived his rights by stating unequivocally that he wished to speak with law enforcement and acting in a manner inconsistent with asserting his Miranda rights) (In the criminal context: "A defendant may waive his Fifth Amendment rights if the waiver is made voluntarily, knowingly and intelligently.") (citation omitted); <u>United States v. Conners</u>, 816 Fed. Appx. 515, 518 (2d Cir. 2020) (holding that, based on the totality of the circumstances, that Defendant's waiver was valid) ("To be voluntary, the waiver must be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" (citing <u>United States v. Medunjanin</u>, 752 F.3d 576, 586 (2d Cir. 2014)). <u>See also United States v. Miller</u>, 2018 U.S. Dist. LEXIS 233718, at *5 (D.D.C. Feb. 23, 2018) (Chutkan, J.) (holding that the criminal defendant's waiver was valid because she was adequately informed of her rights and was not coerced to waive the privilege; valid waiver must have been made "voluntarily, knowingly and intelligently." (citation omitted).

**1.    FINRA is Bound by the Precedent
Set by SEC v. Jarkesy and Alpine**

The Supreme Court in <u>Jarkesy</u> applied constitutional limitations to the SEC's in-house enforcement procedures. <u>Jarkesy</u>, 144 S. Ct. at 2139. Although the decision was limited to whether Seventh Amendment rights apply in an administrative setting, it follows that the Court subjected the SEC to all constitutional limitations. To hold that one amendment's protections apply to these proceedings but another amendment's protections do not would be absurd. <u>Alpine I</u>, as mentioned above, likened FINRA's hearing officers to SEC ALJs. <u>Alpine I</u>, 2023 U.S. App. LEXIS 16987, at *6-7. There, the court indicated that there may be a constitutional problem with the way in which FINRA operates. <u>Id</u>. at *9-10.

Following the Appointments Clause analysis in <u>Lucia v. SEC</u>, 585 U.S. 237 (2018), the <u>Alpine I</u> court held that Alpine had a strong argument that FINRA is a state actor. <u>Alpine I</u>, 2023 U.S. App. LEXIS 16987, at *6-7. The court reasoned that because the SEC ALJs in <u>Lucia</u> were subject to the Appointments Clause, a constitutional limitation on authority, and because FINRA hearing officers are near carbon copies of the SEC ALJs, it follows that FINRA hearing officers could be subject to the same constitutional limitations. <u>Id</u>.

In <u>Lucia</u>, the Court applied the "significant authority test" to determine that the SEC ALJ's were officers of the United States, not merely SEC employees. <u>Lucia</u>, 585 U.S. at 245 (citing <u>Buckley v. Valeo</u>, 424 U.S. 1, 126 (1976)). The Court found that the SEC ALJs "hold a continuing office established by law." <u>Id</u>. at 247

13

(citing <u>Freytag v. Commissioner</u>, 501 U.S. 868, 881 (1991)). <u>Lucia</u> held that, rather than "serving temporarily or episodically, SEC ALJs receive[] a career appointment." <u>Id</u>. at 248 (alterations in original) (citing 5 C.F.R. § 930.204(a) (2018)). The Court also concluded that SEC ALJs exercise significant discretion over an important government function, i.e., enforcing securities laws. <u>Id</u>. at 241, 245, 248. Specifically, the ALJs exercise significant authority by shaping the administrative record. <u>Id</u>.; <u>see also Alpine I</u>, 2023 U.S. App. LEXIS 16987, at *5-6 ("The ALJs could, among other things, demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt"). The Court held that due to the nature of the ALJs employment and the significant discretion they exercise, the SEC ALJs wield significant executive power and are, thus, subject to the Appointments Clause, a constitutional limitation. <u>Lucia</u>, 585 U.S. at 251.

        <u>Alpine I</u> held that Alpine has a strong argument for applying the Appointments Clause to FINRA because, as discussed above, they are "near carbon copies" to SEC ALJs. <u>Alpine I</u>, 2023 U.S. App. LEXIS 16987, at *6-7. Although <u>Alpine II</u> did not discuss the merits of Alpine's constitutional challenge, the Court ruled that FINRA's practices violate the private nondelegation doctrine because there must be "an accountable government actor 'that retains the discretion to approve, disapprove, or modify FINRA's delegated decisions." <u>Alpine</u> II, 2024 U.S. App. 29728, at *26 (quoting <u>Ass'n of Am. R. R. v. United States DOT (Amtrak I)</u>, 721 F.3d 666, 671 (D.C. Cir. 2013), <u>vacated and remanded on other grounds</u>, <u>575 U.S. 43 (2015)</u>).  As a

result, FINRA could, "without any SEC review of its decision on the merits, effectively decide who can trade securities under federal law." Id. at *25.

The similarities in the level of discretion FINRA and SEC staff hold cannot be overlooked. Just like SEC ALJs, FINRA officers shape the administrative record. Alpine I, 2023 U.S. App. LEXIS 16987, at *6 (FINRA's officers have the power to "demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt."). The record, curated by several excruciating stages of in-house appeals, can be reviewed de novo once the final FINRA decision is appealed to the SEC. Alpine II, 2024 U.S. App. 29728, at *20-21 (SEC review of a final FINRA decision "includes an 'independent review of the record' to determine whether the FINRA member 'engaged in the conduct FINRA found,' 'whether that conduct violated the rules specified in FINRA's determination,' and whether the discipline otherwise accords with the Exchange Act." (citations omitted)). Jarkesy applied constitutional limitations to the SEC's in-house proceedings because of the discretion it had to act as the prosecutor, judge, and jury. Alpine held that FINRA exercises the same level of discretion. Therefore, under Jarkesy, FINRA is subject to constitutional limitations.  [[Under Jarkesy, Lucia, and Alpine I, the control FINRA has over the record demands constitutional limitations. Under Alpine II, that control must be subject to oversight by a committee that is limited by constitutional protections.]]

FINRA's sanctions carry the force of federal law. 15 U.S.C. § 78s(g)(1). FINRA's sanctions are intended to be punitive, not remedial. See FINRA's Sanctions

Guidelines at 2. FINRA authorized itself to impose permanent bars on individuals who violate FINRA Rules. FINRA Rule 8310. Permanent bars from FINRA are permanent bars from the securities industry, the effect of which is the corporate equivalent of capital punishment. PAZ Sec., Inc. v. SEC, 494 F.3d 1059, 1065 (D.C. Cir. 2007). Per FINRA's Sanctions Guidelines, a permanent bar is the standard sanction for Rule 8210 violations for failure to respond. A bar is effective upon imposition and is not stayed during the appeals process. FINRA's blog post, "Working on the Front Lines of Investor Protection – Barring Bad Actors from the Industry", FINRA states it is "particularly proud" of its ability to bar alleged "bad actors" from the industry.

On November 7, 2024, January 3, 2025, and February 6, 2025, Petitioner received additional Rule 8210 Requests, this time for on-the-record, sworn testimony. The language found in each of these Requests, provided:

> FINRA staff will consider assertions of common law testimonial privilege such as attorney-client privilege. **Because FINRA is not a governmental agency, however, the Fifth Amendment privilege against self-incrimination does not apply in its investigations and proceedings. Refusing to appear for testimony or to answer a question based on an assertion of that privilege constitutes a violation of FINRA Rule 8210 and may expose you to sanctions, including a permanent bar from the securities industry.** (emphases added)

Smith Aff. at Exhibit E, F, G. The language of the Request and the uncited FINRA "policy" that purports to bind Petitioner is at odds with Alpine II,

On November 24, 2024, FINRA issued a statement in response to the

decision in <u>Alpine II</u>, providing in relevant part: "As FINRA continues to consider its response to the decision, it believes it can implement measures to address the framework the court requires." <u>See</u>, R. De Ramos, "FINRA Statement Regarding U.S. Court of Appeals DC Circuit Court Decision in <u>Alpine Securities Corporation vs. Financial Industry Regulatory Authority, Inc.</u> (Nov. 26, 2024) (Complaint, <u>Exhibit E</u>). In spite of its own acknowledgment that it is subject to <u>Alpine II</u>, which explicitly limits FINRA's authority to act unilaterally in such an extreme way, FINRA continues to threaten Petitioner with a permanent bar.

   FINRA's in-house investigative and enforcement processes allow it to exercise significant executive authority over associated individuals, like Petitioner, who have no choice but to associate with FINRA in order to pursue a career in the securities industry. In so doing, FINRA acts as the investigator, prosecutor, judge, jury, and appellate court. However, the law is plain, particularly in light of <u>Jarkesy</u> and the <u>Alpine</u> cases, that FINRA may not trample on constitutional rights, including forcing Petitioner to waive his Fifth Amendment rights. These are actions from which FINRA was enjoined in <u>Alpine I</u>. <u>Alpine I</u>, 2023 U.S. App. 16987, at *9-10. As to penalties, the Supreme Court in <u>Jarkesy</u> was definitive: punitive remedies can only be decided in a court of law. <u>Jarkesy</u>, 144 S. Ct. at 2130. The sanctions FINRA is pursuing against Petitioner are intended to punish and deter. <u>Jarkesy</u> and <u>Alpine</u> are to be read that constitutional protections are to be respected by FINRA.

   The Investigation is one Petitioner takes very seriously and has already cost him. Right now, FINRA has unchecked power over him and ignores even the

fact that it must act within the boundaries of the Constitution.

**<u>FINRA is Subject to the Fifth Amendment</u>**

The United States Constitution provides Petitioner certain inalienable rights, such as the right to life, liberty, and property, as well as the privilege against self-incrimination. U.S. CONST. Amend. V. The investigation may lead to the suspension or loss of Petitioner's insurance license, thereby depriving him of liberty, because he was forced to waive his constitutional right against self-incrimination. Petitioner is aware of no agreement with FINRA that he has signed where he has waived any constitutional right.

The Fifth Amendment privilege may be asserted in *any proceeding*, criminal or civil, and protects against any disclosures that the claimant reasonably believes could be used in a criminal prosecution or otherwise lead to evidence that might be so used. <u>Doe v. District of Columbia</u>, 2021 U.S. Dist. LEXIS 264812, at *3-4 (D.D.C. Aug. 19, 2021) (emphasis added) (applying the Fifth Amendment privilege to discovery subpoenas issued in civil proceedings in which there could be a related criminal prosecution) (quoting <u>Kastigar v. United States</u>, 406 U.S. 441, 444-45 (1972) (holding that the Fifth Amendment privilege can be exercised in any proceeding, investigatory or adjudicatory); <u>see</u> <u>also</u> <u>SEC v. College Bound</u>, 849 F. Supp. 65, 67 (D.D.C. 1994) (applying the Fifth Amendment privilege in SEC proceedings); <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 316 (1976) (holding that the Fifth Amendment privilege applied in a disciplinary hearing seeking testimonial evidence that might incriminate the witness in future criminal proceedings, and that waiver of the

privilege may not be waived); <u>Garrity v. New Jersey</u>, 385 U.S. 493, 499-500 (1967) (holding that the full force of Constitutional protections extends to all people, not certain people in certain circumstances); <u>Spevack v. Klein</u>, 385 U.S. 511, 516 (1967) (applying the Fifth Amendment privilege to disbarment proceedings).

In <u>Doe</u>, this Court considered whether a third-party witness could assert his privilege against self-incrimination in response to a subpoena served upon him by the plaintiff in a civil sexual harassment claim. <u>Doe</u>, 2021 U.S. Dist. LEXIS 264812, at *1-2. The Court held that to invoke the privilege, the danger of self-incrimination must be real, not remote or speculative. <u>Id</u>. at *4 (citations omitted). Notably, where the issues are context-specific, "a witness generally may not make a blanket assertion of his Fifth Amendment right … Instead, the privilege must be assessed on a 'question-by-question basis.'" <u>Id</u>. at *4 (citations omitted). The Court held that the third-party witness could not assert a blanket privilege because some of the information sought from him would not yield incriminating information, but that he could assert the privilege on a question-by-question basis. <u>Id</u>. at *6. The court found that the third-party witness had a real fear of self-incrimination, even if he was unaware of plans for law enforcement to initiate a criminal investigation into his conduct. <u>Id</u>. (citing <u>In re Corrugated Container Antitrust Litig.</u>, 662 F.2d 875, 885 (D.C. Cir. 1981) (applying the Fifth Amendment privilege to civil contempt hearings).

Petitioner has a real fear that FINRA's investigatory findings can be used in a related criminal investigation or prosecution solely because FINRA says

19

so. Each of the Rule 8210 Requests for Testimony Petitioner has received states:

> • You will be sworn under oath when you testify. Therefore, *giving false answers could lead to your **prosecution for perjury***.

> • FINRA staff will consider assertions of common law testimonial privileges such as attorney-client privilege. Because FINRA is not a governmental agency, however, ***the Fifth Amendment privilege against self-incrimination does not apply in its investigations and proceedings.*** *Refusing to appear for testimony or to answer a question based on an **assertion of that privilege constitutes a violation of FINRA Rule 8210 and may expose you to sanctions, including a permanent bar from the securities industry.***

Smith Aff. at Exhibits E, F, G (emphases added). FINRA investigations are not a matter of public record. Smith Aff., Exhibit E, F, G at 4. That FINRA boasts of using Rule 8210 examinations for other purposes raises questions as to FINRA's motives and the permissibility of its Rule 8210 "Requests".  <u>See</u> Smith Aff. at ¶ 9

Here, FINRA appears not to be focused on any sales practice or rule violation regarding Petitioner, but a purported violation of Rule 2010, which is its "catch-all" rule for ethical conduct it does not like.  The Rule is amorphous and has no objective standard. It provides:

> "A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade."

However, what causes FINRA concern is apparently, based on the frame of reference from the "street sweep" appears to be the equivalent of a perjury charge. <u>See</u> NY CLS Penal §§ 210.00(5), 210.10, 210.15. The penalties under those New York

statutes range from 364 days of imprisonment and a $1,000 fine (NY CLS Penal §§ 70.15(1), 80.05(1)) (third degree perjury, class A misdemeanor) to seven years imprisonment and a $5,000 fine (NY CLS Penal §§ 70.00(2)(d), 80.00(1)) for first degree perjury, a class D felony. Although FINRA claims it will adjust its procedures according to the Alpine II holding, it has not published that but continues to demand that Petitioner "waive" his constitutional rights. That waiver may well hinder or impair any defense Petitioner is later required to prevent if in fact some regulator or other entity charges him with wrongdoing. Petitioner has cooperated with FINRA's investigation and will happily continue to do so without waiving his constitutional rights. Smith Aff. at ¶ 11. Petitioner is not seeking to assert a blanket privilege. He simply wishes to be afforded the right to defend himself. The Constitution protects Petitioner from being placed in this position.

Petitioner emphasizes he has engaged in no wrongdoing.

FINRA has repeatedly refused to acknowledge Petitioner's Fifth Amendment rights and continues to demand his testimony. But that could, depending on the examiner, injure Petitioner's defense in any trial he faced. Conversely, if Petitioner does not testify by asserting his Fifth Amendment privilege, FINRA could automatically impose an industry bar that is not stayed pending the appeals process. That is outrageously unfair, violates the standard and spirit of Jarkesy and  Alpine II, and would ruin Petitioner's career and business.

Petitioner has made a sufficient showing to establish a likelihood of its ultimate success on his constitutional challenge.  FINRA should not be allowed to

21

continue to violate Petitioner's constitutional rights by demanding his sworn testimony.

**B. <u>No Adequate Remedy at Law Exists for Petitioner</u>**

To establish that there is no adequate remedy at law absent an injunction, Petitioner must show that "irreparable injury is <u>likely</u>[.]" <u>Winter v. NRDC, Inc.</u>, 555 U.S. 7, 22 (2008). The D.C. Circuit sets a high standard for irreparable injury. <u>Mohammed Nazir Bin Lep v. Trump</u>, 2020 U.S. Dist. LEXIS 234044, at *33-34 (Dec. 14, 2020) (Bates, J.) (citing <u>Mexichem Specialty Resins, Inc. v. EPA</u>, 787 F.3d 544, 555 (D.C. Cir. 2015)); <u>see also</u> <u>Hi-Tech Pharmacal Co. v. FDA</u>, 587 F. Supp. 2d 1, 11 (D.D.C. 2008) ("[T]he alleged injury must be "certain, great, actual, and imminent[.]"); <u>Sierra Club v. U.S. Dep't of Energy</u>, 825 F. Supp. 2d 142, 151 (D.D.C. 2011) (An injunction "must remedy present harm, not prior injuries[.]"); <u>Davis v. Billington</u>, 76 F. Supp. 3d 59, 65 (D.D.C. 2014) (denying preliminary injunction where plaintiff had "no concrete proof" that the harm he alleged would materialize).

As a result of FINRA's  disregard of his constitutional rights, Petitioner has suffered and will continue to suffer irreparable harm and thus is entitled to injunctive relief.  A court in equity may not refuse to exercise jurisdiction unless there exists an adequate remedy at law.  None exists here because it is impossible to quantify the future economic losses that Petitioner will suffer from the loss of his business which represents his life's work.  Additionally, Petitioner will be irreparably harmed by FINRA's repeated threats to bar him from the industry permanently unless he waives his constitutional rights.

In <u>Alpine II</u>, the court recognized that "FINRA automatically stays the effectiveness of all sanctions other than a bar or expulsion issued following a non-expedited proceeding." <u>Alpine II</u>, 2024 U.S. App. LEXIS 29728, at *34. Permanent bars and expulsions, unlike many other FINRA sanctions, cannot be undone later. Once such a sanction is imposed, it will have lasting devastating consequences that cannot be adequately remedied later. <u>Id</u>. at *33-34.

**C.  <u>The Threatened Injury to Petitioner Outweighs the Potential Harm to FINRA</u>**

To determine whether the potential harm to FINRA would outweigh the potential harm to Petitioner, the balancing test weighs "the public need on the one hand, and the individual claim of constitutional protections on the other." <u>Balt. City Dep't of Social Services v. Bouknight</u>, 488 U.S. 1301, 1304 (1988) (citing <u>California v. Byers</u>, 402 U.S. 424, 427 (1971)). "Therefore, when 'balanc[ing] the competing claims of injury,' the Court must 'consider the effect on each party of the granting or withholding of the requested relief.'" <u>Church v. Biden</u>, 573 F. Supp. 3d 118, 146 (D.C. Cir. 2021) (Kollar-Kotelly, ,J.) (quoting <u>Winter</u>, 555 U.S. at 24).

The risk of irreparable harm to Petitioner easily outweighs any injury to FINRA.  On the one hand, an injunction would safeguard Petitioner's business reputation and livelihood. An injunction would also serve to discourage FINRA from engaging in similar misconduct.

By contrast, FINRA has deliberately ignored the law, despite acknowledging that its enforcement procedures must change to adhere to the <u>Alpine II</u> framework. "FINRA unquestionably has an interest in enforcing its own

23

rules." <u>Alpine II</u>, 2024 U.S. App. LEXIS 29728, at *30 (citing 15 U.S.C. § 78o-3(b)(6)).

In <u>Alpine II</u>, the opinion was limited to expulsion proceedings, but here Petitioner's

entire business and career is at stake; the relief he seeks does not impede upon

FINRA's interests or abilities to enforce its rules. <u>Id</u>. at *31; <u>cf</u>. *34, n. 3 ("FINRA will

also sometimes bar individuals from associating with a FINRA member... Such a

bar may be meaningfully different from expulsion of a FINRA member firm since a

person barred from trading securities can pursue other work while appealing to the

SEC, while a firm organized for the purpose of trading securities cannot." (internal

citation omitted). Requiring FINRA to respect constitutional rights and subjecting

its enforcement processes to constitutional limitations has no effect on its ability to

enforce its rules.

FINRA would not be precluded from investigating and punishing rule

violations. The injunction sought merely precludes FINRA from doing so in violation

of the Constitution.  Thus, FINRA would be able to enforce its rules, as long as it

does not require waiver of constitutional rights or threaten permanent bars that

would be imposed automatically and remain in effect through the appeals process.

The injunction will only require FINRA to conduct enforcement procedures fairly

and with due process.  Therefore, the balancing of the equities lies in Petitioner's

favor, and, thus, an injunction should be granted.

### D. __An Injunction is in the Public Interest__

Finally, the public interest does not weigh against granting an

injunction, but rather it weighs in favor of such a grant. "[I]t is always in the public

24

interest to vindicate constitutional rights." <u>Costa v. Bazron</u>, 464 F. Supp. 3d 132, 157 (D.D.C. 2020) (Moss, J.) (citing <u>Montgomery v. Comey</u>, 300 F. Supp. 3d 158, 175 (D.D.C. 2018)); <u>see</u> <u>also</u> <u>M.G.U. v. Nielsen</u>, 325 F. Supp. 3d 111, 124 (D.D.C. 2018) (Friedman, J.) (immigration case finding that while there is a public interest for the government to institute removal proceedings, there is also a public interest in the government respecting the rights of immigrants while those proceedings are pending). In <u>Alpine II</u>, the court held that granting the injunction would ensure Alpine's constitutional claims could be "fully litigated, without being throttled by a shutdown of its business." <u>Alpine II</u>, 2024 U.S. App. LEXIS 29728, at *31. Further, the court found that it would "not leave shareholders or the public unprotected from 'continued victimization' by Alpine. <u>Id</u>.

The same is true here. Petitioner should be permitted to bring these challenges without losing his livelihood during the appeals process, or even prior to any decision regarding the allegations against him. He should be permitted to assert his Fifth Amendment rights before the disciplinary action is ever brought against him without fearing a permanent bar from the industry in which he built a blemish-free, decades-long career.

Finally, it is in the public interest to prevent an organization like FINRA, from wielding such unchecked power that carries with it the force of federal law. It is in the public interest to ensure that organizations like Respondent cannot take away one's livelihood and career without allowing one to exercise one's fundamental rights.

## **Conclusion**

For the foregoing reasons, Petitioner respectfully requests that this Court enter a Temporary Restraining Order prohibiting FINRA from forcing his to waive his Fifth Amendment rights.


Dated:  Owings Mills, Maryland
        February 15, 2025

RKW LAW GROUP

By: */s/ H. Mark Stichel*
H. Mark Stichel (DC Bar # )
10075 Red Run
Boulevard Suite 401
Owings Mills, Maryland 21117
(443) 379-8987
HMStichel@RKWlawgroup.com

Anthony Paduano
(*pro hac vice pending*)
Paduano & Weintraub LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 785-9100
ap@pwlawyers.com

*Attorney for Petitioner*
*Francis G. Smith*