**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FRANCIS G. SMITH,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 25-447 (JEB) |
| **FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,** | |
| **Defendant.** | |

**MEMORANDUM OPINION AND ORDER**

The Financial Industry Regulatory Authority (FINRA) has required Plaintiff Francis Smith to testify on the record and under oath about potential misconduct. Smith responded by bringing this lawsuit challenging that requirement as a violation of his Fifth Amendment right against self-incrimination. He has filed a Motion for a Temporary Restraining Order to prevent FINRA from compelling him to testify. Because Smith has not shown a likelihood of irreparable harm, the Court will deny his Motion.

**I.      Background**

FINRA is a private, not-for-profit Delaware corporation tasked with regulating securities firms and individuals associated with those firms. To fulfill that mission, it promulgates rules governing itself and its members. One is Rule 8210, which authorizes FINRA to require persons subject to its jurisdiction "to provide information orally, in writing or electronically . . . and to testify at a location specified by FINRA staff." The Rule provides, "No member or person shall fail to provide information or testimony or to permit an inspection and copying of books, records, or accounts pursuant to this Rule."

1

FINRA can bring enforcement actions against members who have violated a FINRA Rule, the Exchange Act, or a Securities and Exchange Commission regulation.  See 15 U.S.C. § 78s(g)(1).  Its Department of Enforcement "is the entity designated to investigate violations of federal securities laws and self-regulatory rules and regulations."  ECF No. 1 (Compl.), ¶ 5. FINRA has neither subpoena power nor the authority to bring actions in court to enforce its sanctions.  It can, however, expel members for any violations of its rules, and FINRA membership is mandatory to engage in securities trading in the United States.  Alpine Securities Corp. v. FINRA, 121 F.4th 1314, 1340 (D.C. Cir. 2024) (Walker, J., concurring in part). Expulsion from FINRA, then, is tantamount to a total bar from the securities industry.  Id.

A party to a FINRA disciplinary proceeding can appeal the ruling to the National Adjudicatory Council (NAC), FINRA's appellate tribunal.  See FINRA Rule 9311.  NAC "may affirm, dismiss, modify, or reverse with respect to each finding."  FINRA Rule 9348.  When NAC hears an appeal, the disciplinary decision is stayed pending NAC's decision.  See FINRA Rule 9311.  The subject of a disciplinary proceeding can appeal NAC's decision to the SEC, which can also review any of FINRA's disciplinary decisions "on its own motion."  15 U.S.C. § 78s(d)(2).  Similarly, the SEC can stay FINRA's sanctions via application from the subject of the proceeding or on its own initiative.  Id. § 78s(d)(1).  The SEC reviews the underlying decisions de novo and can "affirm, modify, or set aside the sanction."  Id. § 78s(e)(1).  Final decisions by the SEC are subject to review by a federal circuit court.  Id. § 78y.

Under certain circumstances, FINRA can initiate an expedited disciplinary proceeding against a member.  See FINRA Rules 9551–59.  Such proceedings "have more compressed timelines and generally involve less internal review."  Alpine Securities Corp. v. FINRA, 121 F.4th at 1322 (majority opinion).  NAC can review those proceedings only on its own initiative.

See FINRA Rule 9559(q).  The subject of the proceeding may seek SEC review, but the "filing of an application for review by the SEC shall not stay the effectiveness of final FINRA action, unless the SEC otherwise orders."  FINRA Rule 9559(r).

Plaintiff Francis Smith, the president of a "holistic financial advisory business," is a securities broker-dealer and a member of FINRA.  See ECF No. 2-2 (Francis Smith Decl.), ¶¶ 2–3.  In March 2024, FINRA's Department of Enforcement sent him a request for information regarding certain licenses that were premised on his potentially fraudulent completion of continuing-education courses.  Id., ¶¶ 4, 6.  Plaintiff responded to that request.  Id., ¶ 4. In November, the Department requested under FINRA Rule 8210 that Smith testify in its investigation, on the record and under oath, in December.  See ECF No. 14-1 (Decl. of Ania Stoklosa), ¶¶ 6–7.  The Department sent Plaintiff several additional requests, each of which delayed his testimony, id., ¶ 7, and each of which informed him that "[b]ecause FINRA is not a governmental agency, . . . the Fifth Amendment privilege against self-incrimination does not apply in its investigations and proceedings."  ECF No. 2-7 (Nov. 7 FINRA Letter) at ECF p. 4. FINRA further explained, "Refusing to appear for testimony or to answer a question based on an assertion of that privilege constitutes a violation of FINRA Rule 8210 and may expose you to sanctions, including a permanent bar from the securities industry."  Id.  As of now, FINRA has not initiated a formal disciplinary proceeding against Smith.  See Stoklosa Decl., ¶ 8.  It has also represented that it will not initiate an expedited disciplinary proceeding against him.  See ECF No. 14-2 (Decl. of William Thompson), ¶ 23.

Shortly before his rescheduled testimony date of February 19, 2025, Smith filed his Complaint, along with his Motion for a Temporary Restraining Order.  See ECF No. 2 (Mot.). Plaintiff contends that FINRA acts as an arm of the government when investigating securities

violations and that its request for testimony therefore violates his Fifth Amendment right against self-incrimination.  See Compl., ¶¶ 43–57.

## II.    Legal Standard

Motions for TROs and preliminary injunctions are governed by the same standard.  "A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (alterations in original) (quoting Winter, 555 U.S. at 20).  "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted."  Hospitality Staffing Solutions, LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)).

## III.    Analysis

Plaintiff argues that being required to testify before FINRA is *per se* an irreparable injury because he will be forced to either sacrifice his Fifth Amendment rights or risk expulsion from the industry.  See Mot. at 22; ECF No. 15 (Reply) at 24.  That harm, however, is not "certain and great," "actual and not theoretical," and "of such imminence that there is a clear and present need for equitable relief."  Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (cleaned up).  Because the lack of an irreparable injury alone is enough to defeat a request for preliminary relief, id., the Court will deny Smith's Motion on that ground, without considering the other Winter factors.

In Alpine Securities Corp., our Circuit held that Alpine, a FINRA member subject to summary expulsion in an expedited proceeding, would face "irreparable harm because it faces a grave risk of being forced out of business before full SEC review."  121 F.4th at 1329.  The court expressly limited its opinion "to expulsion orders issued in expedited proceedings," determining that Alpine had not demonstrated "that it is entitled to a preliminary injunction against any sanctions short of expulsion that FINRA may impose in the expedited proceeding."  Id. at 1330–31.  "Expulsion from FINRA . . . is unique," the panel explained, "because many types of sanctions imposed by FINRA, short of expulsion, can be undone later."  Id.  Importantly for our purposes, the Circuit rejected Alpine's argument that "being forced to litigate before an allegedly unconstitutionally appointed FINRA officer" was "*per se* irreparable harm."  Id. at 1333 (quotation marks omitted).  As the court explained, a constitutional violation alone does not constitute irreparable harm; plaintiffs instead must demonstrate "immediate or ongoing harm" stemming from the alleged violation.  Id. at 1334 (quoting In re al-Nashiri, 791 F.3d 71, 80 (D.C. Cir. 2015)).  The upshot of Alpine's holding is that only immediate, unreviewable expulsion justifies preliminary relief; every FINRA sanction short of such expulsion does not.

In so concluding, the Circuit did not write on a blank slate.  In In re al-Nashiri, that court held that there was no "immediate or ongoing harm" from the disciplinary body's "alleged constitutional defects" because Nashiri's "purported injury" of conviction "ha[d] yet to occur."  791 F.3d at 80.  Our Circuit explained that Nashiri, if convicted, could "fully vindicate" his constitutional rights by receiving a vacatur of his conviction on appeal.  Id.  The court rejected his argument that he would "suffer irreparable injury in the form of the *sui generis* harms associated with defending against capital charges."  Id. (quotation marks omitted); accord Deaver v. Seymour, 822 F.2d 66, 69 (D.C. Cir. 1987) ("[T]he cost, anxiety, and inconvenience of having

to defend against a single criminal prosecution are not recognized as irreparable injuries justifying an equitable remedy.") (quotation marks omitted).

Those decisions require this Court to conclude that there is no likelihood of irreparable harm here. Smith apparently fears that, in the course of testifying before FINRA's Department of Enforcement, he will give inculpatory testimony that leads to a criminal conviction or his expulsion from the securities industry — or that he will refuse to testify and subsequently be expelled from that industry. Alpine and al-Nashiri, however, counsel that those harms can be cured in the normal course of litigation — *i.e.*, through FINRA, SEC, and judicial review. Smith's compelled testimony itself, then, does not constitute an irreparable injury. Accord Lukezic v. FINRA, Inc., No. 25-623, ECF No. 11 (Order) (Mar. 7, 2025) (holding that plaintiff "has not shown that any sanctions will [be] irreversible, nor has he shown that the contemplated August 2025 hearing is a genuine emergency justifying immediate intervention").

Smith, moreover, has not shown the existence of any concrete injury that is "of such imminence that there is a clear and present need for equitable relief." Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (quotation marks omitted). Any downstream sanction from Smith's testimony will likely not be handed down until at least nine months from now. See Thompson Decl., ¶¶ 12, 17 ("[d]isciplinary hearings are typically held within six to fifteen months after the filing of" a complaint, and "[d]isciplinary decisions are typically issued three to six months after the close of the hearing"). FINRA has not even filed a complaint against Smith, and it has disavowed any intent to bring an expedited disciplinary action. Id. ¶¶ 22–23. His request for the extraordinary relief of a TRO is therefore premature.

**IV.    Conclusion**

For the foregoing reasons, the Court ORDERS that Plaintiff's Motion for a Temporary Restraining Order is DENIED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  April 2, 2025